Theodore V. H. Mayer
Vilia B. Hayes
Robb W. Patryk
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

*Attorneys for Defendant Merck & Co., Inc.*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

JORGE CASANOVA,

                                    Plaintiff,

                -against-

MERCK & CO., INC.,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - x

No.: **07 CV 7415**

**NOTICE OF REMOVAL OF
DEFENDANT MERCK & CO.,
INC.**

PLEASE TAKE NOTICE that Merck & Co., Inc. ("Merck") hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Supreme Court of the State of New York, County of Bronx to the United States District Court for the Southern District of New York and respectfully states to this Court the following:

1.      This action involves allegations regarding the prescription drug Vioxx®. On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring 148 Vioxx products liability cases to the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407. *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Merck intends to seek the transfer of this action to that Multidistrict Litigation, *In re Vioxx Marketing, Sales Practices and Products Liability Litigation,* MDL No. 1657, and will shortly provide to the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

2.      Plaintiff Jorge Casanova ("Plaintiff") filed this civil action against Merck in the Supreme Court of the State of New York, County of Bronx, bearing Index Number 18288/07.  Plaintiff seeks damages for "serious and permanent injuries, including cardiac dysfunction, and other cardiovascular injuries, organ impairment, damage and pain and suffering" that he alleges were caused by his use of the prescription medicine Vioxx.  (Compl. ¶ 2.)  Plaintiff's claims are based on theories of false and deceptive trade practices, negligence, strict liability, breach of implied warranty, breach of express warranty, false advertising, and fraud.

3.      As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because Merck has (1) satisfied the procedural requirements for removal and (2) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

I.    **MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.**

4.      The New York State Secretary of State was served with a copy of Plaintiff's Verified Complaint ("Complaint") on August 9, 2007.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441.  A true and correct copy of the Summons and Complaint are attached hereto as Exhibit 1.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 112(c) because it is the "district and division embracing the place where such action is pending."  *See* 28 U.S.C. § 1441(a).

6.      No previous application has been made for the relief requested herein.

2

7.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Court for the Supreme Court of the State of New York, Bronx County.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest and is between citizens of different states.

### A.      Complete Diversity Of Citizenship.

9.      There is complete diversity between Plaintiff, a citizen of New York, and Merck, a citizen of New Jersey.

10.     Merck is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, White House Station, New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

11.     Upon information and belief, Plaintiff is a citizen of the State of New York.[1]

### B.      The Amount In Controversy Requirement Is Satisfied.

12.     It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest.  Plaintiff seeks damages for alleged "serious and permanent injuries, including cardiac dysfunction, and other cardiovascular

---

1.      Plaintiff alleges that she is a resident of New York.  (Compl. ¶ 11.)  Plaintiff alleges no other alternative state of residence.  Accordingly, New York is the state in which Plaintiff is domiciled and, therefore, the state of which he is a citizen.  *See* 28 U.S.C. § 1332(a); *see also Linardos v. Fortuna*, 157 F.3d 945, 946 (2d Cir. 1998) ("[f]or purposes of diversity jurisdiction, a party's citizenship depends on his domicile.").

injuries, organ impairment, damage, and pain and suffering" that Plaintiff alleges were caused by her use of the pharmaceutical Vioxx, which was manufactured by Merck. (Compl. ¶ 2.) The foregoing makes it apparent that the amount in controversy for Plaintiff is well in excess of $75,000. *See, e.g., James v. Gardner*, 2004 U.S. Dist. LEXIS 23174, *10 (E.D.N.Y. 2004) (where plaintiff fails to represent a definitive amount in controversy, the court may look to defendant's petition for removal for a showing of reasonable probability that plaintiff's claim for damages exceeds the jurisdictional amount).

       13.    Federal courts confronted by similar complaints in which plaintiffs alleged that they suffered similar injuries as a result of their use of Vioxx found that they have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and, either explicitly or implicitly, concluded that the amount in controversy exceeded $75,000. *See, e.g., Porter v. Merck & Co., Inc.*, No. 4:03CV12LN, Memorandum and Order at 2 (S.D. Miss. June 17, 2003);[2] *Zeedyk v. Merck & Co., Inc.*, No. 02C4203, Order at 2 (N.D. Ill. August 30, 2002).[3]

---

2.   True and correct copies of the complaint and unpublished decision in *Porter* are attached hereto as Exhibit 2.

3.   True and correct copies of the complaint and Court's Order in *Zeedyk* are attached hereto as Exhibit 3.

WHEREFORE, Defendant Merck respectfully removes this action from the Supreme Court of the State of New York, County of Bronx, pursuant to 28 U.S.C. § 1441.

DATED:          New York, New York
                August 20, 2007

                                        Respectfully submitted,

                                        HUGHES HUBBARD & REED LLP


                                        By: *Vilia B. Hayes*
                                            Theodore V. H. Mayer
                                            Vilia B. Hayes
                                            Robb W. Patryk

                                        One Battery Park Plaza
                                        New York, New York  10004-1482
                                        (212) 837-6000

                                        *Attorneys for Defendant Merck & Co., Inc.*

5

# Exhibit 1

SUPREME COURT STATE OF NEW YORK
COUNTY OF BRONX

DATE **8-7-07**
INDEX NO.: **18288/07**

JORGE CASANOVA,

                                            Plaintiff,

        - against -

~~MERCK & CO., INC.,~~

**SUMMONS**
The basis of venue is Plaintiff's
Residence, Plaintiff resides at
530 St. Lawrence Avenue
Bronx, New York 10473
County of Bronx

                                            Defendant.

To the above named defendant(s)

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's Attorney within 20 days after the service of this
summons, exclusive of the day of service ( or within 30 days after the service is complete
if this summons is not personally delivered to you within the State of New York); and in
case of your failure to appear or answer, judgment will be taken against you by default for
the relief demanded in the complaint.

Dated: Brooklyn, New York
        August 1, 2007

Defendant's address:
Merck & Co., Inc. via
New York Secretary of State

**LAW OFFICES OF FREDRIC S. MASURE**
1352 Pennsylvania Avenue
Brooklyn, New York 11239
(718) 942-7777

```
WCS&R
AUG 17 2007
RECEIVED
```

M00B9A0Z72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------------X
JORGE CASANOVA

         Plaintiff,

                - against -                **VERIFIED COMPLAINT**
                                          **JURY DEMANDED**

**MERCK & CO., INC.**

         Defendant.
-----------------------------------------------------------------------X

1.      The Plaintiff, **JORGE CASANOVA** will bring and maintain her civil action for damages arising from her ingestion of the non-steroidal anti-inflammatory drug Vioxx, manufactured by Defendant, Merck & Co., Inc. ("Merck").

2.      That from on or about February 2001 and thereafter as a result of the ingestion of Vioxx, Plaintiff developed serious and permanent injuries, including cardiac dysfunction, and other cardiovascular injuries, organ impairment, damage and pain and suffering.

3.      That Vioxx has been linked to increased risk or cardiac arrest and stroke in patients taking the medication. On September 27, 2004 Merck, the manufacturer of Vioxx, disclosed to the United States Food & Drug Administration("FDA") that the Data Safety Monitoring Board for ongoing efficacy study of Vioxx had recommended the study be halted for safety reasons. The study demonstrated an increased risk of cardiovascular events, including heart attack and stroke, in patients taking Vioxx compared to a placebo. Overall, patients taking Vioxx in the study had twice the risk of a heart attack compared to patients not taking the medication.

WCS&R

AUG 1 7 2007

RECEIVED

M00B940260

4.     That after Defendant Merck's submission to the FDA, Vioxx was approved for marketing in 1999, and introduced to the market later that year.  After obtaining FDA approval, Defendant Merck increased the available dosages of Vioxx, and promoted the drug despite having knowledge of studies demonstrating injuries associated with ingestion and use of the drug, as well as continued adverse reactions.  Vioxx was promoted as a lower risk alternative to other non-steroidal anti-inflammatory drugs.

5.     That industry-sponsored studies presented in June 2000 at the European United League Against Rheumatism, an organization of which Merck is a member and corporate sponsor, demonstrated that Vioxx use resulted in a statistically significant increase in hypertension and stroke.  Not only did Merck do nothing to further publicize these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today.

6.     That defendant Merck minimized the risk of cardiovascular injuries posed by Vioxx notwithstanding that in Merck's own 8000-patient trial of Vioxx more than twice as many arthritis patients taking Vioxx sustained heart attacks and stroked than those who took a competitor manufacturer's non-steroidal anti-inflammatory drug (naproxen).  Commenting on this study in its 2000 Annual Report, defendant Merck reported "there was no difference in cardiovascular mortality between the group treated with Vioxx or naproxen." At the same time, defendant Merck admitted, "significantly fewer heart attacks were observed in patients taking naproxen compared to the group taking Vioxx in this study." In a further attempt to minimize the risk posed by Vioxx, defendant Merck assured

2

M00B94Q261

the consumer public in its 2001 Annual Report that "Merck scientists believe the weight of evidence supports the safety of Vioxx.

       7.     That on or about August 29, 2001, The Journal of American Medical Association(JAMA) published a peer reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, reporting that Merck, in its Vioxx trials, concealed the relative risk of confirmed adjudicated thrombotic cardiovascular event(defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks")

       8.     That in August 2004, a study financed by the FDA showed that patients receiving high dosages of Vioxx had about 3.2 times the risk of heart attack or sudden death from heart attack problems that patients using other common pain killing medications. Even at this late date, defendant, Merck criticized such findings, announcing publicly that it stood "behind the efficacy and safety, including the cardiovascular safety of Vioxx."

       9.     That September 30, 2004 defendant Merck finally withdrew Vioxx from the market, disclosing information about the strong association between the use of Vioxx and cardiovascular injury. However, the withdrawal from the market came far too late for plaintiff who already developed injuries form ingesting Vioxx.

       10.    That Pursuant to CPLR Section 503(a) venue is proper in Kings County because one or more parties resides in Kings County.

       11.    That Plaintiff resides in 530 St. Lawrence Avenue,

3

M0089402062

Bronx, New York.

12.     That defendant, Merck is incorporated in New Jersey, with its principal palace of business in New Jersey, and has offices, does business and is present in the State of New York.

13.     That upon information and belief, Vioxx is known as rofecoxib.

14.     That upon information and belief, Vioxx was or is a registered trademark of defendant Merck.

15.     That at all times relevant to this action, the defendant, Merck was in the business of manufacturing, promoting, marketing, researching, distributing, and selling prescription medications, including Vioxx, in the State of New York.

16.     That defendant Merck distributed and sold Vioxx in part through retail distributors.

17.     That before, after and at the time of the manufacture, promotion, and sale of Vioxx to Plaintiff, defendant Merck possessed detailed technical information and had knowledge that Vioxx caused significant and harmful side effects, including but not limited to: cardiovascular injury, including heart attack and stroke and/or death, and was otherwise extremely hazardous.

18.     That the defendant Merck concealed this information from Plaintiff and the consuming public.

19.     That the defendant Merck publicly represented that Vioxx was safe and posed no significant health hazzards to consumers.

20.     That in fact, Vioxx is highly toxic and presents an unacceptable risk

M00B940263

of harm to consumers.

21. That the defendant Merck unnecessarily put at risk and wrongfully caused Plaintiff harm and injury without full, proper, and/or timely disclosure, and without warning of the potential associated risks, hazards and/or benefits of Vioxx in a truthful way, and/or otherwise acted in such a way as to be negligent, reckless, strictly liable, and otherwise liable for Plaintiff's injuries and associated damages.

<u>COUNT ONE FALSE & DECEPTIVE TRADE PRACTICES</u>.

22. That the Plaintiff hereby repeats and repeats and realleges those allegations contained in this Verified Complaint and enumerated "1" through "21" with the same force and effect as though they were set out in its entirely.

23. That General Business Law Section 349(a) declares unlawful any deceptive acts or practices in the conduct of any business, commerce or trade.

24. That defendant Merck either knew or should have known that Vioxx was dangerous and not effective for its purpose as represented, and posed greater risks than disclosed.

25. That defendant Merck was under a duty to disclose this information to Plaintiff, under laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this Complaint, because Merck made representations and partial disclosures concerning the nature and quality o fits product which it had a duty to correct, because Merck was in a superior position to know the true state of facts about the dangerous and defective nature of Vioxx and its known risks to Plaintiff because of the effects of Vioxx were latent.

5

M0089402364

26.     That as a direct and proximate result of Merck's fraud and other actionable conduct described herein, Plaintiff was caused to suffer damages September 2004 and thereafter including but not limited to palpitations, shortness of breath, dizziness, angina, heart attack, blood clots, kidney problems, numbness, pain, suffering, permanent injury and loss in the quality of life.

27.     That as a direct and proximate result of Merck's fraud and other actionable conduct described herein, Plaintiff was caused to incur expenses for medical treatment and for non-medical care required as a result of Plaintiff's injury and treatment.

28.     That the limitations on liability set forth in CPLR Section 1601 do not apply by reason of the exemption set forth in CPLR Section 1602(2) and (7).

29.     That as a result of the foregoing Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

## COUNT TWO NEGLIGENCE

30.     That the Plaintiff hereby repeats and repeats and realleges those allegations contained in this Verified Complaint and enumerated "1" through "29" with the same force and effect as though they were set out in its entirely.

31.     That defendant Merck is liable because it breached its duty to Plaintiff. Merck was negligent and/or reckless in the licensing, testing, design, manufacturing, packaging, warning, advertising, promotion, distribution, and sale of Vioxx.

32.     That the negligence of defendant Merck includes, but is not limited to negligence in the manufacturing, compounding, testing, inspecting, packaging, labeling, distributing, marketing, examining, and selling of Vioxx, as well as in failing to warn and/or

6

M00B04D265

adequately warn the consuming public directly and through its prescribing physicians, and medical professionals, of the unreasonably dangerous effects associated with Vioxx after Merck had knowledge of the same, thereby breaching the continuing duty to warn.

33.    That Merck was likewise negligent in failing to accompany Vioxx with proper, adequate, and necessarily timely warnings regarding the possible adverse side effects associated with its use and the comparative severity and duration of such side effects.

34.    That as a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## COUNT THREE STRICT LIABILITY

35.    That the Plaintiff hereby repeats and repeats and realleges those allegations contained in this Verified Complaint and enumerated ""1" through "34" with the same force and effect as though they were set out in its entirely.

36.    That the defendant Merck at all times hereinafter mentioned was engaged in the marketing, promotion, formulation, manufacture, distribution, and sale of Vioxx. Defendant Merck is strictly liable in tort to the Plaintiff for injuries arising from the use of Vioxx.

37.    That at the time of its distribution and thereafter, Vioxx was defective, unsafe, and unreasonably dangerous for its intended and/or foreseeable uses.

38.    That Vioxx manufactured and/or supplied by defendant, Merck was placed in the stream of commerce in a defective and unreasonably dangerous condition in that the foreseeable risks of Vioxx exceeded the benefits associated with its design or

7

M009840266

formulation.

39.    That as a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## COUNT FOUR BREACH OF IMPLIED WARRANTY

40.    That the Plaintiff hereby repeats and repeats and realleges those allegations contained in this Verified Complaint and enumerated ""1" through "39" with the same force and effect as though they were set out in its entirely.

41.    That at all times hereinafter mentioned, defendant Merck marketed, sold, and distributed Vioxx, knew and promoted the use for which the aforesaid drug was being used by the Plaintiff and prescribed by medical professionals, and impliedly warranted to Plaintiff that Vioxx was of merchantable quality and safe for its intended use.

42.    That Plaintiff and/or prescribing medical professionals reasonably relied upon the skill, expertise and judgment of the defendant Merck in its representations as to the fact that Vioxx was safe for its intended use and of merchantable quality.

43.    That the defendant Merck breached its implied warranty of merchantability in that Vioxx at the time of its distribution and thereafter, was defective and not fit for the ordinary purpose for which it is used: reduction of inflamation and pain relief.

44.    That as a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amounts of all lower courts

## COUNT FIVE BREACH OF EXPRESS WARRANTY

45.    That the Plaintiff hereby repeats and repeats and realleges those allegations contained in this Verified Complaint and enumerated ""1" through "44" with the

8

MXXB94X0287

same force and effect as though they were set out in its entirely.

46.    That the defendant Merck expressly warranted that Vioxx was safe for its intended use.  Vioxx did not conform to Merck's express representations including, but not limited to: the representation that it was well accepted in patient studies; the representation that it was safe; the representation that it did not have unacceptable levels of dangerous and life threatening side effects; representations set forth in this complaint as having been made by Merck; and representations made in Merck's written materials/ As previously alleged, at all times relevant to the events giving rise to Plaintiff's causes of action, notice of the dangers of Vioxx had been presented to Merck.

47.    That as a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

COUNT SIX FALSE ADVERTISING

48.    That the Plaintiff hereby repeats and repeats and realleges those allegations contained in this Verified Complaint and enumerated ""1" through "47" with the same force and effect as though they were set out in its entirely.

49.    That General Business Law Section 350 declares unlawful advertising that is false or misleading in a material respect in the conduct of any business or in the furnishing of any service.

50.    That the aforementioned acts, representations and/or omissions by defendant Merck were deceptive and misleading practices and/or advertising within the meaning of New York's General Business Law.

51.    That as a result of the foregoing, Plaintiff has been damaged

9

in a sum exceeding the jurisdictional amounts of all lower courts.

## COUNT SEVEN FRAUD

52.    That the Plaintiff hereby repeats and repeats and realleges those allegations contained in this Verified Complaint and enumerated ""1" through "51" with the same force and effect as though they were set out in its entirely.

53.    That the defendant, Merck made material misrepresentations regarding the dangers, risks, and/or potential side effects of Vioxx.

54.    That Merck knew the misrepresentations were false.

55.    That Merck made the misrepresentations with the intent to deceive its customers and potential customers, including Plaintiff.  Specifically, Merck continued to promote Vioxx, without disclosing its risks, despite having knowledge of same.

56.    That Plaintiff justifiably relied upon Merck's misrepresentations regarding the dangers, risks and/or potential side effects of Vioxx.

57.    That as a result of Plaintiff's reliance, Plaintiff suffered severe personal injuries.

58.    That as a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

59.    WHEREFORE, Plaintiff demands judgment against the Defendant, Merck, including punitive and exemplary damages, in a sum exceeding the jurisdictional limits of all lower courts with regard to his cause of action, separately and individually, together with interest, costs and disbursements of this action.

60.    Plaintiff seeks such other and further relief as is just and equitable.

61.    Plaintiff demands that all issues of fact in this case be tried by a properly empaneled jury.

Dated:        Brooklyn, New York
              August 1, 2007

                                    Yours, etc.
                                    LAW OFFICES OF FREDRIC S. MASURE
                                    Attorneys for Plaintiff
                                    1352 Pennsylvania Avenue
                                    Brooklyn, New York  11239
                                    (718) 942-7777

11

# Exhibit 2

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF JASPER
COUNTY, MISSISSIPPI

AMOS PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                  **PLAINTIFFS**

VS.                                                      NO. 2002- _12-0236_

**MERCK & COMPANY, INC.**
(hereinafter "Merck"); G.D. Searle and Co.
(hereinafter "Searle") a subsidiary of
Pharmacia, Inc. (hereinafter "Pharmacia"), a
foreign corporation; Monsanto Company;
Pfizer, Inc.; John Doe #1, M.D., John Doe #2,
M.D., John Doe #3, M.D., and John Doe #4,
M.D., all Mississippi physicians whose true
names and identities are presently unknown
or unconfirmed but will be substituted by
amendment                                                **DEFENDANTS**

**F I L E D**
JASPER COUNTY, MISS.
DEC 3 1 2002
MARK A. ISHEE
CIRCUIT CLERK

## <u>COMPLAINT</u>

COME NOW the Plaintiffs, Amos Porter, Flora Sumrall, and Annie Laurie
Varnado, in the above-styled and numbered cause, by and through their attorneys of
record, and file this their Complaint against the Defendants, and in support thereof
would show unto the Court the following, to-wit:

1.    This is a civil action brought on behalf of Plaintiffs who were prescribed
and used the prescription medication VIOXX (Rofecoxib) and/or CELEBREX
(Celecoxib). Plaintiff Sumrall used Vioxx and Celebrex which caused her to suffer renal
problems, severe edema, and other injuries. Plaintiff Porter used Celebrex which
caused him to suffer a stroke and other injuries. Plaintiff Varnado used Vioxx which
caused her to suffer from heart problems, edema and other injuries. This action seeks
damages for personal injuries and damages caused by the drugs named herein and

M003817452

ingested by Plaintiffs.

2.      Plaintiff Amos Porter is an adult resident of The First Judicial District of Jasper County, Mississippi. Plaintiff Flora Sumrall and Annie Laura Varnado are adult residents of Clarke County, Mississippi.

3.      Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

4.      Defendant G. D. Searle & Co. (hereinafter "Searle") is a subsidiary of Pharmacia, Inc., and is upon information, knowledge and belief an Illinois Corporation, and is not registered to do business in Mississippi. As such, Defendant Searle can be served via certified mail through its CEO Alan L. Heller at its principle place of business: 5200 Old Orchard Road, Skobie, Illinois, 60077. At all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pharmacia is a Delaware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent:   CT Corporation System: 631 Lakeland East Drive; Flowood, Mississippi, 39208.

5.      Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia Inc. and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Monsanto is

-2-

M003817453

licensed and registered to do business in Mississippi, and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.     Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).   Defendant Pfizer is licenses and registered to do business in Mississippi and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

7.     Defendants John Doe #1, M.D., John Doe #2, M.D., John Doe #3, M.D., and John Doe #4, M.D., are physicians licensed by the State of Mississippi with residence and/or principal place of business in Mississippi, whose identities are at present unknown or unconfirmed and will be substituted by amendment.

8.     Venue is proper in The First Judicial District of Jasper County, Mississippi as the part of the cause of action and injury occurred in The First Judicial District of Jasper County, Mississippi.

9.     The claims of Plaintiffs accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit.   Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in this judicial district.   Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.     Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies.   Defendant Merck did manufacture, design, package, market and distribute this drug.   This Defendant encouraged the use of this drug in improper customers, misrepresented the safety and

M003817454

effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums, including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.    Celebrex is a pharmaceutical treatment for musculaskeletal joint pain associated with osteoarthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Seale, Pharmacia, Monsanto and Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

12.    At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their products as herein set forth, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. The drug company Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

-4-

M0003817455

## COUNT I

13.    Plaintiffs allege all prior paragraphs of this complaint as if fully set out herein.

14.    The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

15.    Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

16.    The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

17.    Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx, via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Vamados' injuries.

WHEREFORE, Plaintiffs Sumrall and Vamado deny judgment against Defendant Merck in an amount of compensatory and punitive damages as a jury deems reasonable plus costs.

## COUNT II

18.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

M003817456

herein.

19.    The pharmaceutical Celebrex (Celecoxib) designed, manufactured, sold and/or supplied by Defendants Searle, Pharmacia, Monsanto and/or Pfizer, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

20.    Further, the pharmaceutical Celebrex designed, manufactured, sold and/or supplied by one or more of the above-referenced Defendants was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing warnings or instructions, both independently and when coupled with the aggressive marketing campaign the above-referenced Defendants initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

21.    The pharmaceutical Celebrex designed, manufactured, distributed, marketed, sold and/or supplied by one or more of the above-referenced Defendants was defective due to inadequate testing.

22.    Additionally, Defendants Searle, Pharmacia, Monsanto and Pfizer failed to provide timely and adequate post-marketing warnings or instructions after the Defendants knew or learned of the risk of injury from Celebrex via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

N003817457

## COUNT III

23.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out herein.

24.    Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce. Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

25.    Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

26.    Defendant Merck knew or should have known that consumers such as Plaintiffs Sumrall and Varnado would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein. Defendant's negligence was a contributing cause of Plaintiffs Sumrall and Varnado's injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

27.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out herein.

M003B17458

28.    Defendants Searle, Pharmacia, Monsanto and Pfizer had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Celebrex (Celecoxib) into the stream of commerce.  These Defendants failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Celebrex in the stream of commerce.

29.    These Defendants knew or should have known that Celebrex created an unreasonable risk or bodily harm, including the risk of death.

30.    Despite the fact that Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that Celebrex caused unreasonably, dangerous side effects which many users would by unable to remedy by any means, these Defendants continued to market, and continue to, market to this day, Celebrex to the consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

31.    Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that consumers such as Plaintiffs Sumrall and Porter would foreseeably suffer injury or death as a result of Defendants' failure to exercise ordinary care as described above.  Defendants' negligence was a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT V

32.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

M0003817459

hereto.

33.    Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

34.    Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

35.    Vioxx does not conform to the express representations made through Defendant Merck's advertising.

36.    Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

37.    Defendants Merck conduct in this matter was contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

## <u>COUNT VI</u>

38.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

39.    Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

40.    Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product,

M00381749

Celebrex.

41.    Celebrex does not conform to the express representations made through Defendants' advertising.

42.    Celebrex does not conform to the express representations made by Defendants' agents/sales representatives.

43.    These Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Porter.

WHEREFORE, plaintiffs Sumrall and Porter demand judgment against Defendants Searle Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VII

44.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

45.    At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiffs Sumrall and Varnado, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

46.    Plaintiffs Sumrall and Varnado reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its intended use.

47.    Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used

M0038174GI

described above.

48.     Defendant Merck conduct in this regard was contributing cause of injuries and damages of Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT VIII

49.     Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

50.     At the time Defendants Searle, Pharmacia, Monsanto and Pfizer marketed, sold and distributed Celebrex for use by the general consuming public, including Plaintiffs Sumrall and Porter, these Defendants knew of the use for which Celebrex was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

51.     Plaintiffs Sumrall and Porter reasonably relied upon the skill and judgment of these Defendants as to whether Celebrex was of merchantable quality and safe and fit for its intended use.

52.     Contrary to such implied warranty, Celebrex was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

53.     These Defendants' conduct in this regard was a contributing cause of Plaintiffs Sumrall and Porter's injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IX

54.    Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

55.    Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Defendant Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs Sumrall and Varnado in particular, would rely upon said representations when purchasing said products.

56.    Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market its product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising.    Defendant Merck's representations made concerning Vioxx as a safe and effective drug were made so that Plaintiffs Sumrall and Varnado, and the general consuming public, would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiffs Sumrall and Varnado did rely on Defendant Merck's representations in this regard.

60.    At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with

M003B17463

reckless disregard to their truth.    As a result of Defendant Merck's fraud and misrepresentation, Plaintiffs Sumrall and Varnado suffered injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT X

61.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62.    Defendants Searle, Pharmacia, Monsanto and Pfizer negligently, recklessly, intentionally and fraudulently made material misrepresentations that Celebrex was safe and effective.    These Defendants represented Celebrex as safe so that the general consuming public, including Plaintiff's decedent in particular, would rely upon said representations when purchasing said products.

63.    Prior to and following the introduction of Celebrex into the market as a prescribable pharmaceutical medication, Defendants Searle, Pharmacia, Monsanto and Pfizer set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising.    Defendants' representations made concerning Celebrex as a safe and effective drug were made so that Plaintiffs Sumrall and Porter and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians.    In fact, Plaintiffs Sumrall and Porter did rely on Defendants Searle, Pharmacia, Monsanto and Pfizer's representations.

M003B17464



64.      At the time Defendants Searle, Pharmacia, Monsanto and Pfizer made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth.  As a result of these Defendants' fraud and misrepresentation, Plaintiffs Sumrall and Porter suffered injuries.

WHEREFORE, this Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT XI

65.      Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

66.      Plaintiffs sought the care and treatment of Defendants John Doe #1, M.D., John Doe, M.D. #2, John Doe #3, M.D., and John Doe, #4 M.D. for various ailments and maladies.

67.      In relation to said care and treatment, these Defendants prescribed Vioxx to Plaintiffs Sumrall and Varnado and Celebrex to Plaintiffs Sumrall and Porter.

68.      Defendants John Does, M.D., #1, #2, #3 and #4 knew, or should have known, of the dangerous side effects of these medications, and prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

69.      The medical negligence of Defendants John Does, M.D., #1, #2, #3 and #4 was a direct and proximate cause of the Plaintiffs' injuries.

M003B17465

 

WHEREFORE, Plaintiffs demand judgment against these Defendants as applicable to each in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

70.     Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct; and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiffs seek damages for medical expense, past, present, and future; emotional distress, past, present, and future; lost wages, past, present, and future; pain and suffering, past, present and future; permanent physical impairment, and other such injuries as Plaintiffs may show at trial.

71.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. These Defendants' conduct exhibits such an entire want of care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' rights. The Plaintiffs are separately and singularly entitled to punitive damages from the corporate Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover

N003817466

damages as set forth above from Defendants, including cost of Court, pre-judgment and

post-judgment interest at the legal rate, and that Plaintiffs have such other and further

relief, both general and special, to which they may be justly entitled under the facts and

attending circumstances.

Respectfully submitted,

AMOS PORTER, FLORA SUMRALL, AND
ANNIE LAURIE VARNADO, PLAINTIFFS

BY _____
Attorneys for Plaintiffs

SHANNON LAW FIRM, PLLC
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

M003B17467

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 17 2003

J.T. NOBLIN, CLERK
BY _____ DEPUTY

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                    PLAINTIFFS

VS.                                         CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs
Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and
motion for leave to amend the complaint. Defendants G.D. Searle
LLC, Pharmacia Corporation, Monsanto Company (now known as
Pharmacia Corporation) and Pfizer, Inc. have responded in
opposition to the motion and the court, having considered the
memoranda of authorities submitted by the parties, concludes that
both the motion to amend and the motion to remand should be
denied.

Plaintiffs, through counsel, filed this lawsuit in the
Circuit Court of Jasper County on December 31, 2002, seeking to
recover damages for injuries allegedly sustained as a result of
their having taken one or both of the prescription pain relief

drugs Celebrex and Vioxx.  Plaintiffs, all Mississippi residents, named as defendants five non-resident pharmaceutical manufacturers, and also included four "John Doe" defendants, all of whom were alleged to be "Mississippi physicians whose true names and identities are presently unknown or unconfirmed." On January 10, 2003, the manufacturer defendants, who had not yet been served with process, removed the case to this court on the basis of diversity jurisdiction.  In their motion to remand, filed promptly following removal, plaintiffs contend that defendants' pre-service removal constitutes a defect in the removal procedure which necessitates remand.  Plaintiffs further urge that in the event the case is not remanded on that basis, they should be allowed to amend their complaint to identify those "Mississippi physicians" who were initially identified only as "John Doe" defendants, as a consequence of which complete diversity will be lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

There is no question but that there is now (and that there was at the time of removal) jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds the $75,000 threshold for jurisdiction under the diversity statute (a point which plaintiffs do not dispute); and although plaintiffs, themselves Mississippi residents, named John Doe defendants whom they represented were also Mississippi residents, the law is clear that "the citizenship of defendants sued under fictitious names shall be disregarded" in determining whether there is complete diversity for removal purposes.  28

2

M003B17444

U.S.C. § 1441(a).  The remaining defendants named by plaintiffs in
the complaint are all citizens of states other than Mississippi,
and consequently there is complete diversity of citizenship
between the parties.

Moreover, while plaintiffs contend that under the Supreme
Court's decision in Murphy Brothers v. Michetti Pipe Stringing,
Inc., 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448
(1999), defendants could not properly remove the case until they
were formally served with process and that defendants' pre-service
removal was therefore defective, neither this court, nor any court
identified by plaintiff or of which this court is aware, has
interpreted Murphy Brothers as precluding removal by a defendant
prior to formal service of process.  The Court in Murphy Brothers
held only that a defendant is not obligated to take action in a
case until after it has been properly served with process; it did
not hold that a defendant must await service to take action.  See
Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL
23830, *1 (N.D. Ill. January 2002)(holding that since the
defendant was not properly served with process, "the thirty-day
removal technically never really began," and therefore, "(the

_____

[1]    In Murphy Brothers, the Supreme Court, applying the
"bedrock principle" that "[a]n individual or entity named as a
defendant is not obliged to engage in litigation unless notified
of the action, and brought under a court's authority, by formal
process," concluded that "a named defendant's time to remove is
triggered by simultaneous service of the summons and complaint, or
receipt of the complaint, 'through service or otherwise,' after
and apart from service of the summons, but not by mere receipt of
the complaint unattended by any formal service."  Id. at 347-48.

3

M003817445

defendant's) notice of removal was timely"). Defendants' removal

was therefore both substantively and procedurally proper.

The question then becomes whether plaintiffs should now be

permitted to amend their complaint, post-removal, to include as

defendants those physicians who were identified as John Doe

defendants in their original complaint. For the reasons that

follow, the court is of the opinion that in this case, plaintiffs'

request to amend should be denied.

> 28 U.S.C. § 1447(e) states:
>
> (e) If after removal the plaintiff seeks to join
> additional defendants whose joinder would destroy
> subject matter jurisdiction, the court may deny joinder,
> or permit joinder and remand the action to the State
> court.

While the statute, by its terms, refers only to post-removal

efforts by plaintiffs to "join additional defendants," the Fifth

Circuit has recognized that § 1447(e) applies, as well, to the

identification of fictitious defendants after removal. See Doleac

ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5ᵗʰ Cir. 2001).

In Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir.

1987), the Fifth Circuit addressed the standard applicable to

where a plaintiff seeks to amend to add a non-diverse defendant

following removal of an action on the basis of diversity

jurisdiction. The court held that in such cases, the district

court "should consider the extent to which the purpose of the

amendment is to defeat federal jurisdiction, whether plaintiff has

been dilatory in asking for amendment, whether plaintiff will be

significantly injured if amendment is not allowed, and any other

4

M003B1744G

factors bearing on the equities." _Id._ at 1182.  Although this
case differs somewhat from the typical § 1447(e) case in that the
non-diverse defendants proposed to be identified by the amendment
were fictitiously named in the original complaint, that
circumstance does not render the _Hensgens_ analysis inappropriate
since "the equitable nature of the _Hensgens_ analysis allows the
court to consider not only the plaintiff's motive, but other
equitable factors," as well.  _Lacy v. ABC Ins. Co._; No. Civ. A.
95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors
might include "the strength of plaintiff's case against the
non-diverse defendants and the diverse defendant's ability to
anticipate the citizenship of the fictitiously named defendant(s)
at the time of removal").

Turning, then, to the _Hensgens_ factors, in the case at bar,
it may be somewhat difficult to characterize as truly "dilatory"
plaintiffs' request to amend since plaintiffs did indicate in
their original complaint that they were desirous of suing the
physicians who prescribed Vioxx and/or Celebrex to them.  On the
other hand, there can be no doubt that plaintiffs themselves knew
- they must have known - the identity of their own prescribing
physicians at the time the complaint was filed; and yet their
attorneys, rather than take the time to ascertain this information
from their clients, resorted to the expedient of suing the doctors
as fictitious parties.  Apparently, this was done in counsels'
haste to get the complaint filed before Mississippi's recently
enacted medical malpractice tort reform law took effect on January

5

M003B17447

1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily
have known and confirmed the identity of the John Doe defendants
before filing this suit, and yet did not seek to learn the
identity of the John Doe defendants, or any of them, until after
the case was removed.[3]  Given that the identity of these
defendants could have been known before suit was filed, it can
fairly be said that the post-removal attempt to join them as
defendants is "dilatory."

       That brings the court to the question of plaintiffs' purpose,
or motivation, in suing, or attempting to sue, these doctors.  It
is perhaps true in the usual case that the fact that a plaintiff
has included a defendant as a fictitious defendant in his state
court pleading would tend to belie an inference that the
plaintiff's motivation for seeking to amend post-removal to
substitute a real party for the one previously identified only as
a fictitious party is to defeat diversity jurisdiction.  See
Gilberg v. Stepan Co., 24 F. Supp. 2d 355, 358 (E.D. La. 1998)
(fact that the plaintiff was unable to effect the substitution
before the defendant removed "does not somehow convert any
subsequent effort at substitution into a joinder 'for the sole

-------------------------------------------------------------

       [2]     As defendants note, this new legislation, which took
effect the day after plaintiffs' complaint was filed, placed
significant restrictions on filing lawsuits against physicians.

       [3]     Perhaps they had intended to do this prior to serving
the diverse defendants, working under the mistaken impression that
the case would not be removable until at least one of the diverse
defendants was served, and were foiled in their efforts when the
diverse defendants filed their notice of removal prior to service
of process.

                                6

M003817448

purpose of destroying diversity'"); <u>Davis v. American Commercial
Barge Line Co.</u>, No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D.
La. June 25, 1998) (substitution of real party for fictitious
party named prior to removal indicates purpose of joinder is not
solely to destroy diversity). Here, however, the court is
persuaded that plaintiffs' motivation, not just for undertaking to
now substitute these doctors as the real party defendants, but for
having undertaken to sue them in the first place, was to avoid
federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which
are directed against the manufacturer defendants, and assert
products liability based claims, and fraudulent and negligent
misrepresentation by those defendants as to the safety and
efficacy of the products at issue. A major theme of these counts
- in fact, the major theme - is that the manufacturer defendants
knew of the dangers posed by these drugs all along, and yet they
withheld this information and intentionally marketed them, "both
directly to the consuming public and indirectly to physicians
through drugs sales representatives," as safe and effective, and
at all times, before, during and after marketing the products,
failed to provide adequate warnings or instructions of the
defective nature of the products. The complaint alleges
throughout that in addition to their marketing to the consuming
public, the manufacturer defendants' sales representatives, who
marketed the products to doctors, made fraudulent
misrepresentations concerning the safety and efficacy of these

M003817449

products. As to the doctors themselves, plaintiffs' complaint contains one count charging medical negligence in which plaintiffs bluntly allege that these physicians prescribed these drugs to plaintiffs, that they "knew, or should have known, of the dangerous side effects of these medications," and that their prescribing these medications "presents a deviation from the standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in the alternative, here, given plaintiffs' explicit, repeated and consistent charge that the manufacturer defendants concealed and misrepresented information about the subject drugs to physicians, plaintiffs' entirely conclusory allegation that the doctors "knew, or should have known, of dangerous side effects of these medications," without any indication of a factual basis for such an allegation, strongly suggests to the court that plaintiffs have sued the physicians only as a means of avoiding federal court. Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No. 5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the plaintiffs' general references to knowledge possessed by "defendants," the complaints, which alleged that the manufacturers undertook to deceive everyone, including the pharmacist defendants, about the safety of their drugs, could not "reasonably and legitimately be construed as alleging any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware");

8

Brown v. Bristol-Myers Squibb Co., Civil Action No. 4:02CV301LN
(S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any
legitimate basis for suing these defendants, if it were to turn
out that plaintiffs, in fact, do have some basis for suing them,
there is nothing to prevent them from bringing a separate action
against them in state court, and in the court's opinion,
plaintiffs will not be prejudiced if required to proceed against
the doctors separately.[4]  The court herein holds only that
plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs'
motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

---

[4]  Of course, if required to proceed separately against the
doctor defendants, plaintiffs would no doubt find their claims
subject to the newly enacted medical malpractice tort reform law;
but their efforts to avoid that law in the manner they chose was
of questionable legitimacy to begin with.  Had they a genuinely
cognizable claim against the doctors, they could and should have
made every reasonable effort to properly name them at the outset,
and could and should have pled a proper claim against them.  They
did neither.

9

M003817451