# Exhibit 3

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FILED

02 MAY -8 PM 3: 27

02CH09935

| | |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all other persons similarly situated<br>Plaintiffs.<br><br>vs.<br><br>MERCK & CO., INC.<br>Defendant. | ) Civil Action No.<br>)<br>)<br>) Amount Claimed: An amount necessary to<br>) satisfy the jurisdictional requirements of this<br>) court<br>)<br>) Plaintiffs demand a jury trial |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Scott Zeedyk, on behalf of himself and all other persons similarly situated, by and through his attorney, John Xydakis, and Complains of Defendant Merck & Co.. Inc. ("Merck"), as follows:

### A. PARTIES AND VENUE

1. Plaintiff, by his attorney, brings this Class Action Complaint on his own behalf and on behalf of all others similarly situated to, *inter alia*, obtain compensatory damages, refunds, disgorgement and the establishment of a medical monitoring program for diagnosis and treatment of the potentially life threatening side effects and diseases caused by the taking of the drug marketed under the brand name "Vioxx" by Defendant Merck.

2. Plaintiff is a resident and citizen of Stickney, Cook County, Illinois. Plaintiff was prescribed and consumed Vioxx during the relevant time period for acute pain management. Plaintiff was unaware of the serious risks associated with the taking of Vioxx.

3. Defendant Merck is a New Jersey corporation having its principal place of business in New York, New York.

4. The court has jurisdiction over the Defendant and the matters herein pursuant to 735 ILCS 5/2-209 as Defendant Merck transacts business within the State Of Illinois on a

M002C06074

regular and continuous basis and has made and performed contracts by the sale of Vioxx and other pharmaceutical products within the State of Illinois.

## B. CLASS OF PERSONS

5.    Plaintiff brings this litigation as a class action pursuant to **735 ILCS 5/2–801** to certify a Plaintiff class.  Plaintiff brings this action on his own behalf and on behalf of the following Class: all persons in the United States, including their successors in interest, who have ingested Vioxx for approved uses and in approved doses and for unapproved uses and unapproved doses.

6.    Excluded from the Class are Defendant and its officers and directors.

7.    <u>Numerosity</u>:  The Class is so numerous that joinder of all members is impracticable. Thousands of persons, throughout the United States, were and/or are prescribed Vioxx.

8.    <u>Typicality</u>: The claims of the representative Plaintiff are typical of the claims of each member of the Class.  Plaintiff and all other members of the Class have used and/or continue to use Vioxx.  Plaintiff has no interests antagonistic to the claims of the Class.

9.    <u>Adequacy of representation</u>:  Plaintiff will fairly and adequately protect and pursue the interests of the members of the Class.  Plaintiff understands the nature of the claims herein and his role in these proceedings, and will vigorously represent the interests of the Class.  Plaintiff's counsel has experience in consumer class cases and is qualified to pursue this litigation for the Class.

10.   <u>The class action is maintainable</u>: This action is appropriate for class status because:

    (a)    the prosecution of separate actions by or against individual members of the Class would create risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant;

    (b)    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole; and

(c)    questions of law or fact common to the members of the Class predominate over any questions affecting only individual members. and a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. This class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. The size of the expected recovery for an individual Class member is not expected to be substantial enough for any one Class member to incur the costs and expenses of this litigation. There are no foreseeable difficulties likely to be encountered in the management of a class action.

11.    Commonality: There are issues of fact and law common to the Class. and these questions predominate over any questions affecting only individual Class members. The common questions include. but are not limited to, the following:

   (a)    whether Defendant has failed to adequately warn of the serious cardiovascular risks and other serious risks associated with the ingestion of Vioxx;

   (b)    whether an emergency notice and revised patient insert warning of the hazards associated with Vioxx should be disseminated to Class members;

   (c)    whether the Defendant negligently designed. manufactured. warned. marketed and advertised Vioxx;

   (d)    whether Defendant adequately and appropriately tested Vioxx;

   (e)    whether patients who have taken Vioxx are entitled to monetary relief;

   (f)    whether the omissions. misrepresentations or false statements were made intentionally. willfully. wantonly, recklessly. or negligently;

   (g)    whether Defendant owed a duty to the Class members, what is the scope of any duty. and was the duty breached;

   (h)    whether the Class members have been damaged and. if so. what is the proper measure of damages;

   (i)    whether Vioxx causes injury to its users;

   (j)    whether Merck is strictly liable for sales and distribution of a dangerously defective product;

(k)    whether Merck negligently designed, manufactured, warned about, distributed
and marketed Vioxx; and

(l)    whether the serious side effects, injuries and damages from the use of Vioxx support
the need for medical monitoring of persons who have used the drug.

## C. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.  At all relevant times hereto, Defendant Merck did or caused Vioxx to be manufactured,
designed, tested, packaged, supplied, marketed, advertised and sold in the United States.

13.  Vioxx is a non-steroidal anti-inflammatory drug ("NSAID") with a COX-2 inhibitor,
which was approved on May 20, 1999, for the treatment of primary dysmenorrhea
(menstrual cramps), for acute pain management in adults and for relief of osteoarthritis.
Vioxx reportedly reduces pain and inflammation while also significantly reducing
incidents of stomach ulcers commonly associated with pain relievers such as aspirin and
ibuprofen.

14.  Traditional NSAIDs such as ibuprofen and aspirin block both COX-2 and COX-1
enzymes. Because the COX-1 enzyme protects the lining of the stomach, blocking it can
lead to stomach irritation. It is believed that COX-2 inhibitors reduce the incidence of
stomach ulcers and bleeding because they do not block COX-1 enzymes.

15.  There are over 86 million users of Vioxx nationwide.  Annual sales exceed $2.5 billion
for Vioxx in the United States.

16.  The Vioxx Gastrointestinal Outcome Research Study (hereinafter "VIGOR"), sponsored
by Merck, was designed to gather information regarding "clinically meaningful upper
gastrointestinal ("GI") events and to develop a large controlled database for overall
safety assessment."

17.  The VIGOR study included about 8000 patients, 4000 for the Vioxx 50 mg a day
treatment group and 4000 for the naproxen 1000 mg a day treatment group, for a median
time period of nine months. (Naproxen is an NSAID, sold under such brand names as
Naprosyn and Aleve). The study compared the safety of the two patient groups. The
results of the study concerning GI events demonstrated that the group on Vioxx has a

significantly lower incidence of GI events, 2.08% compared to Naproxen 4.49%. (GI events include perforations, symptomatic ulcers, and gastrointestinal bleeds).

18.   The VIGOR study also found that serious cardiovascular events occurred in 101 patients (2.5%) in the Vioxx group compared to 46 (1.1%) in the Naproxen group.  In addition, myocardial infarctions (heart attacks) occurred in 20 patients in the Vioxx group (0.5%) compared to 4 patients in the Naproxen group (0.1%).

19.   According to the Department of Health and Human Services ("HHS"), Defendant Merck engaged in a campaign that minimized the serious cardiovascular findings observed in the VIGOR study.  The VIGOR study observed patients on Vioxx with a four to five times increase in myocardial infarctions, compared to patients on the NSAID - Naprosyn (naproxen).

20.   HHS also cited Defendant Merck for engaging in a promotional campaign that minimized the Vioxx/Coumadin (warfarin) drug interaction, (warfarin is an anticoagulant and the mixing of Vioxx and Coumadin can lead to the potentially serious risk of bleeding), making unsubstantiated superiority claims against other NSAIDs, and promoting Vioxx for unapproved uses and dosing regimens.  HHS found Defendant Merck's misrepresentations particularly troubling because of HHS's previous objections to Defendant Merck's misrepresentations.

21.   According to HHS, Merck's press release of May 20, 2001 entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx," which stated that Vioxx has a "favorable cardiovascular profile" was "simply incomprehensible, given the rate of GI and serious cardiovascular events compared to Naproxen."  HHS concluded that Defendant Merck minimized the potentially serious cardiovascular findings of the VIGOR study and minimized the Vioxx/Coumadin drug interaction.

22.   After carefully reviewing the results of the VIGOR study, the U.S. Food and Drug Administration ("FDA") agreed with the Arthritis Advisory Committee recommendations of February 8, 2001 that the label for Vioxx should include the gastrointestinal and cardiovascular information.  Hence, on April 11, 2002, the FDA approved new indication and label changes for Vioxx which included this information.

M002C08078

## D. CAUSES OF ACTION

### COUNT I -(Strict Products Liability)

23.  Plaintiff alleges and incorporates paragraphs 1 through 22 as if set forth fully above.

24.  Defendant Merck is the manufacturer and/or supplier of Vioxx.

25.  Defendant Merck manufactured and/or supplied Vioxx, which was defective and hazardous in design and formulation in that, when left in the hands of Merck, the foreseeable risks exceeded the benefits associated with the design or formulation.

26.  Alternatively, Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous in design or formulation, in that, when it left the hands of Merck, it was unreasonably dangerous, more dangerous that an ordinary consumer would expect and more dangerous than other forms of NSAIDs.

27.  The Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous due to inadequate warning or instruction because Merck knew or should have known that Vioxx posed a greater risk to patients taking it than to those patients taking other NSAIDs.

28.  As the procuring cause and legal result of the defective and hazardous condition of Vioxx as manufactured and/or supplied by Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

29.  Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such tests would have demonstrated that when compared to other NSAIDs, patients taking Vioxx had increased risk of cardiovascular events and adverse drug interactions with Coumadin.

30.  Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should

M002C08079

have known that Vioxx increased the risk of cardiovascular events and adverse drug interactions with Coumadin, when compared to other NSAIDs.

31. As the producing cause and legal result of the defective or hazardous condition of Vioxx, as manufactured and supplied by the Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses, and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.


## COUNT II – (Strict Products Liability - Failure to Warn)

32. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

33. Defendant Merck is the manufacturer and/or supplier of Vioxx.

34. Defendant Merck failed to adequately and fully warn of the higher risk of cardiovascular events, of Vioxx/Coumadin interaction, and of unapproved use, when compared to other NSAIDs.

35. Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such test would have demonstrated that patients taking Vioxx had increased risk of cardiovascular event and adverse drug interaction with Coumadin, when compared to other NSAIDs.

36. Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should have known that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

37. As the producing cause and legal result of the defective or hazardous condition of Vioxx, as manufactured and supplied by the Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services, and did incur medical, health, incidental and related expenses.

M002C08080

and require updated warnings and emergency notice. Absent such equitable relief,
Plaintiff and other members of the Class will suffer irreparable injury for which there is
no adequate remedy at law.

## COUNT III - (Negligence)

38. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

39. Defendant Merck has had a duty to exercise reasonable care in the manufacture, sale,
    distribution, marketing and warning of Vioxx, including a duty to ensure that Vioxx did
    not cause users to suffer from unreasonable and dangerous side effects.

40. Defendant Merck breached its duty to Plaintiff and members of the Class, to exercise
    reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx
    in that Defendant Merck knew or should have known that Vioxx created an
    unreasonably high risk of dangerous side effects, including an unreasonably high risk of
    cardiovascular events and adverse drug interaction with Coumadin, when compared to
    other NSAIDs.

41. Defendant Merck was negligent in the manufacture, sale, testing, distribution, marketing
    and warning of Vioxx in that it:

    (a) failed to issue reasonable and proper warnings regarding all possible adverse
        effects associated with the use of Vioxx;

    (b) failed to conduct adequate pre-clinical testing, clinical testing and post-marketing
        oversight and surveillance to determine the effect of Vioxx;

    (c) failed to provide adequate instruction to health care providers for appropriate risks
        and uses of Vioxx;

    (d) failed to warn Plaintiff and the Class, prior to encouraging the use of Vioxx, that
        Vioxx increased the risk of cardiovascular events and adverse drug interaction
        with Coumadin, when compared to other NSAIDs;

    (e) failed to use reasonable care in the design and manufacturing of Vioxx to avoid
        and prevent the increased risk of cardiovascular events and adverse drug

interaction with Coumadin, when compared to other NSAIDs; and

(f) was otherwise careless or negligent.

42. Defendant Merck knew or should have known that Plaintiff and the Class would foreseeably suffer injury as a result of Defendant Merck's failure to exercise ordinary care as set forth above.

43. As the proximate cause of Defendant Merck's negligence, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other forms of economic loss.

### COUNT IV - (Breach of Express Warranty)

44. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

45. Defendant Merck expressly warranted that Vioxx was safe for use by Plaintiff and the Class for the treatment of conditions for which Vioxx was advertised.

46. Vioxx does not conform to Defendant Merck's express representations because Vioxx does not warn of increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

47. As a direct and proximate result of Defendant Merck's breach of express warranty, Plaintiff and the Class have suffered economic loss in an amount to be proven at trial.

### COUNT V - (Breach of Implied Warranty)

48. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

49. At the time Defendant Merck manufactured, sold, distributed, and marketed Vioxx, Defendant Merck knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

50. Plaintiff and the Class and their health care providers reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality.

safe and fit for its intended use.

51.   However, despite this implied warranty, Vioxx was not of merchantable quality, safe or fit for its intended use because Vioxx was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used.

52.   As a direct and proximate result of Defendant Merck's breach of implied warranty of merchantability, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other economic loss.

### COUNT VI - (Medical Monitoring)

53.   Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

54.   As a direct and proximate result of Defendant Merck's conduct as set forth herein, Plaintiff and members of the Class have been exposed to an unreasonably increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

55.   The increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs, can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that:

    (a) notifies individuals who used Vioxx of the potential harm from Vioxx;

    (b) funds further studies of the long-term effects of Vioxx use;

    (c) funds research into possible cures for the detrimental effects of Vioxx use;

    (d) gathers and forwards to treating health care providers information related to the diagnosis and treatment of injuries and diseases that may result from using Vioxx; and

    (e) aids in the early diagnosis and treatment of resulting injuries and diseases through ongoing testing and monitoring of Vioxx users.

56.   Plaintiff and members of the Class have no adequate remedy at law in that monetary damages alone cannot adequately compensate for the continuing nature of the harm to them, and a monitoring program that notifies them of possible injury and aids in their

M002C0B083

diagnosis and treatment can prevent the greater harms that may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur and worsen.

57. Without a court approved and supervised medical monitoring program, Vioxx users will not receive prompt medical care.


## COUNT VII - (Consumer Fraud)

58. Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

59. At all times relevant hereto and to date there was in force a statute in the State of Illinois 815 ILCS 505 *et seq.*, commonly known as the "Consumer Fraud and Deceptive Practices Act ("Act")," the scope of which covers all of the relevant acts, conduct, practices and transactions noted above and herein.

60. The Plaintiff and members of the Class are consumers, as defined by the Act, of Defendant Merck's product, Vioxx.

61. The acts, practices and conduct of Defendant Merck involved trade practices addressed to the market generally and/or otherwise implicate consumer protection concerns.

62. By one or more of the following acts, practices and conduct noted above in Paragraphs 12-22, directly or by implication, Defendant Merck violated said Act and damaged the Plaintiffs and members of the Class by engaging in unfair and/or deceptive acts or practices, and/or engaging in conduct which creates a likelihood of confusion or misunderstanding, in the conduct of their trade or commerce.

63. That Defendant Merck intended that the Plaintiff and members of the Class rely on its above-mentioned unfair and/or deceptive acts, practices and conduct.

64. That Defendant Merck's acts, practices and conduct were done knowingly, intentionally, willfully, recklessly, with actual malice, and with a wanton disregard of the rights of the Plaintiff and members of the Class, an especially vulnerable group who are suffering from medical ailments and who are not as educated about pharmaceutical drugs as the Defendant Merck is, and as such the Plaintiff and members of the Class are entitled to

M002C08084

punitive, or exemplary, damages.

65.  As a result of said unfair and/or deceptive acts, practices and conduct by Defendant
     Merck, and the Plaintiff and members of the Class' justifiable and reasonable reliance
     thereupon, the Plaintiff and members of the Class have been damaged.

66.  Should they prevail, the Plaintiff and members of the Class are entitled to reasonable
     attorney's fees and costs from Defendant Merck in an amount necessary to compensate
     the Plaintiff and members of the Class for the costs and disbursements of this action
     pursuant to 815 ILCS 505 *et seq.*.

### E. PRAYER FOR RELIEF

WHEREFORE, for each and/or any of the above-mentioned Counts, Plaintiff prays for the
following relief:

   A.  an order certifying the Class as set forth herein, with the named Plaintiff as class
       representative and his counsel as class counsel;

   B.  a declaration that Defendant Merck's conduct violated the law as alleged in each
       cause of action;

   C.  a judgment for Plaintiff and the Class for compensatory damages sustained as a result
       of Defendant Merck's unlawful conduct, including medical, hospital and incidental
       expenses according to proof;

   D.  an order creating a comprehensive court supervised medical monitoring program as
       described herein which will notify users of Vioxx of the increased risks of
       cardiovascular event and adverse drug interaction with Coumadin, when compared to
       other NSAIDs, the costs of which are to be borne by Defendant Merck;

   E.  an order creating a court-supervised trust fund, funded by Defendant Merck, to pay
       for a medical monitoring program, including testing, screening and monitoring of
       potential adverse and harmful effects caused by the consumption of Vioxx;

   F.  an order requiring Defendant Merck to provide Plaintiff and the Class, and health

care providers with revised drug warnings, in substantially the same form and same delivery method as the original warnings were issued;

G.  an order requiring Defendant Merck to refund and make restitution of all monies obtained from the sale of Vioxx to the Plaintiff and the Class;

H.  an order awarding Plaintiff and the Class attorneys' fees, costs and expenses against Defendant Merck as allowed by law;

I.  an order against Defendant Merck awarding Plaintiff and the Class an amount necessary to compensate the Plaintiff and the Class for the costs and disbursements of this action, including reasonable attorney's fees, pursuant to 815 ILCS 505 *et seq*;

J.  pursuant to 815 ILCS 505 *et seq*., an order against Defendant Merck awarding Plaintiff and the Class punitive, or exemplary, money damages found to be suitable and sufficient to deter similar acts by Defendant Merck in the future and to punish Defendant Merck for its previous acts; and

K.  such other or further relief as the Court may hold appropriate.


Respectfully submitted,
SCOTT ZEEDYK on behalf of himself
and all other persons similarly situated



BY: _____
        John Xydakis, Attorney for Plaintiffs


John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

M002C09086

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all other persons similarly situated<br>　　　　　Plaintiffs.<br><br>　　　　vs.<br><br>MERCK & CO., INC.<br>　　　　　Defendant. | ) Civil Action No.<br>)<br>) **Amount Claimed:** An amount necessary to satisfy the jurisdictional requirements of this court<br>)<br>) Plaintiffs demand a jury trial |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth below are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that he verily believes the same to be true.

　　　1. The total money damages sought in the above-captioned case exceeds fifty thousand dollars ($50,000).

FURTHER AFFIANT SAYETH NAUGHT.

John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4203 | **DATE** | 8/30/2002 |
| **CASE TITLE** | Scott Zeedyk, on behalf of himself and all other persons similarly situated vs. Merck & Co., Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

> Plaintiff's Motion to Remand back to Circuit Court of Cook County for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth on the reverse side of this minute order, Zeedyk's motion to remand for lack of subject matter jurisdiction is DENIED [7-1]

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| X | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| | Notices mailed by judge's staff | | | date docketed | | |
| | Notified counsel by telephone. | | | | | |
| | Docketing to mail notices | | | docketing deputy initials | | |
| | Mail AO 450 form | | | | | |
| | Copy to judge/magistrate judge | | | date mailed notice | | |
| kb (lc) | courtroom deputy's initials | | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

M002C08139

(Reserved for use by the Court)

## ORDER

Before this Court is the motion of plaintiff, Scott Zeedyk, to strike or deny defendant's notice of removal. Plaintiff is a citizen of Illinois. Defendant, Merck, is a citizen of New Jersey. This case involves failure to warn claims and allegations that VIOXX, a prescription medicine manufactured by Merck, caused plaintiff, Zeedyk, to sustain life-threatening injuries.

On May 8, 2002, plaintiff filed his original complaint against the defendant in the Circuit Court of Cook County. On May 20, 2002, the defendant was served with service of process. On this date as well, plaintiff was granted leave of court by the Circuit Court to file an amended complaint instanter. On May 29, 2002, this amended complaint was served on the defendant. Pursuant to 28 U.S.C. § 1332, the defendant filed its first notice of removal, on June 12, 2002, based on its receipt of the original complaint, and on its subsequent receipt of the amended complaint, filed an amended notice of removal on June 25, 2002.

Plaintiff moves to remand because it alleges that Merck failed to conform to Local Rule 81.2. This rule requires that the notice of removal be accompanied by a statement of good faith that the jurisdictional limit is met and by either a response by plaintiff to a request to admit or a response to an interrogatory stating that the jurisdictional limit is met or proof of the failure to respond to such a request to admit or interrogatory. Merck did not provide any such responses with its notice of removal. Defendant argues that where, as here, the complaint clearly establishes that the amount in controversy is in excess of the jurisdictional minimum, the defendant need not establish satisfaction of the jurisdictional minimum through the procedure outlined in Local Rule 81.2.

This Court has previously explained that Local Rule 81.2 is "not the exclusive way in which the jurisdiction amount could be established in a case removed from an Illinois court." Murphy v. Avon Products, Inc., No. 02-C-146, 2002 WL 808386 (N.D. Ill. April 30, 2002); Huntsman v. Whitehouse, No. 97-C-3842, 1997 WL 548043 (N.D. Ill. Sept. 2, 1997). Zeedyk seeks, inter alia, compensatory and punitive damages for Merck's alleged knowing, intentional, willful, reckless, and malicious failure to warn. Plaintiffs seeking similar relief against other pharmaceutical manufacturer defendants and making similar allegations of failure to warn received jury awards well in excess of $75,000. See, e.g., Proctor v. Upjohn, 291 Ill.App.3d 265, 286-87 (Ill. App. 1997) (plaintiff received approximately $3 million in compensatory damages and $6 million in punitive damages for failure to warn claim); Batteast v. Wyeth Labs, Inc., 172 Ill. App.3d 114 (Ill. App. 1988) (upholding jury's award of approximately $9 million in compensatory damages and $13 million in punitive damages). Plaintiff attempted to defeat jurisdiction in this court by specifically pleading in the amended complaint that he was waiving his right to damages in excess of $75,000. However, this is impermissible under Illinois pleading rules, which forbid a plaintiff in a personal injury action from pleading in its complaint any amount of damages other than "the minimum necessary to comply with the circuit rules of assignment where the claim is filed." 735 Ill. Comp. Stat. Ann. § 5/2-604 (West 2002); In re Shell Oil Col., 970 F.2d 355, 356 (7th Cir. 1992). Thus, it is reasonably probable that the amount in controversy exceeds $75,000 where similar claims recovered damages well over that amount.

For the foregoing reasons, plaintiff's motion to remand for lack of subject matter jurisdiction is DENIED.